# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB,<br><br>     Plaintiff,<br><br>     v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, *et al.*,<br><br>     Defendants. | **Civil Action No. 11-993 (CKK)** |

## MEMORANDUM OPINION
(March 19, 2013)

Plaintiff Sierra Club filed suit under the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.*, against Defendants the United States Fish and Wildlife Service, Director Dan Ashe in his official capacity, the Department of Interior, and Secretary Kenneth Salazar, also in his official capacity (collectively, "Defendants" or "Fish and Wildlife Service").  Sierra Club alleges the Defendants' response to Sierra Club's petition to revise the critical habitat for the leatherback sea turtle (*Dermochelys coriacea*) was arbitrary and capricious, and that the Defendants have unlawfully delayed in designating the Northeastern Ecological Corridor of Puerto Rico as critical habitat for leatherback turtles.  The parties' cross-motions for summary judgment are fully briefed and ripe for determination.  Upon consideration of the pleadings,[1] the Administrative Record, and the relevant legal authorities, the Court finds the Service's 12-month determination as to how to proceed in response to a petition to revise critical habitat is committed to agency discretion by law and thus unreviewable under the Administrative Procedures Act.  Accordingly,

---

[1]  See Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. [27]; Defs.' Opp'n & Cross-Mot. for Summ. J. ("Defs.' Cross-Mot."), ECF No. [30]; Pl.'s Opp'n & Reply, ECF No. [32]; Defs.' Reply, ECF No. [34].

the Plaintiff's Motion for Summary Judgment is DENIED and the Defendants' Cross-Motion for Summary Judgment is GRANTED.

# I. BACKGROUND

*A.      Endangered Species Act*

Congress enacted the Endangered Species Act ("the Act") in 1973 in order to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved."  16 U.S.C. § 1531(b).  To that end, the Secretaries of Commerce and the Interior are empowered to designate species as threatened or endangered.  *See generally id.* at § 1533.  A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range."  *Id.* at § 1532(6).  A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  *Id.* at § 1532(20).

Prior to 1978, the Secretary was not required to designate critical habitat for listed species.  That year, Congress amended the Act to require the Secretary "to the maximum extent prudent, specify any habitat of such species which is then considered to be critical habitat."  16 U.S.C. § 1533(a)(3)(A).  The Act defines "critical habitat" for both endangered and threatened species as "the specific areas within the geographical area occupied by the species, at the time it is listed . . . on which are found those physical biological features" that are "essential to the conservation of the species," and "may require special management considerations or protection."  *Id.* at § 1532(5)(A)(i);  *see also* 50 C.F.R. § 424.12(b) (listing criteria to be considered in determining what physical and biological features are essential to the conservation of a particular species).  The Secretary may also designate areas outside the geographical area occupied by the species "upon a determination by the Secretary that such areas are essential for

the conservation of the species."  16 U.S.C. § 1532(5)(A)(ii);

The Secretary "may, from time-to-time thereafter as appropriate," revise the designation of critical habitat for a listed species.  16 U.S.C. § 1533(a)(3)(A).  Additionally, any interested person may petition the Secretary to revise a critical habitat designation pursuant to the Administrative Procedures Act, 5 U.S.C. § 553(e).  The Endangered Species Act provides that

> To the maximum extent practicable, within 90 days after receiving the petition of an interested person under section 553(e) of Title 5, to revise a critical habitat designation, the Secretary shall make a finding as to whether the petition presents substantial scientific information indicating that the revision may be warranted. The Secretary shall promptly publish such finding in the Federal Register.

16 U.S.C. § 1533(b)(3)(D)(i); *accord* 50 C.F.R. § 424.14(c)(1).  The "substantial scientific information" standard is satisfied if the petition presents the "amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b)(1).  In making this determination, the Secretary considers whether the petition contains

> (i) Information indicating that areas petitioned to be added to critical habitat contain physical and biological features essential to, and that may require special management to provide for, the conservation of the species involved; or

> (ii) Information indicating that areas designated as critical habitat do not contain resources essential to, or do not require special management to provide for, the conservation of the species involved.

*Id.* at § 424.14(c)(2).  If the Secretary determines that a petition presents substantial information indicating that the requested revision may be warranted, "the Secretary shall determine how he intends to proceed with the requested revision, and shall promptly publish notice of such intention in the Federal Register."   16 U.S.C. § 1533(b)(3)(D)(ii); *accord* 50 C.F.R. § 424.14(c)(3).

B.      *Leatherback Sea Turtles and Sierra Club's Petition*

The leatherback sea turtle was initially listed as an endangered species in 1970 under the Endangered Species Conservation Act of 1969, the precursor to the Endangered Species Act. A.R. 4127 (90-Day Finding &12-Month Determination on a Pet. To Revise Critical Habitat for the Leatherback Sea Turtle).  In 1978, the Fish and Wildlife Service designated certain areas in the U.S. Virgin islands as critical habitat for the leatherback sea turtle.  *Id.*; *accord* 50 C.F.R. § 17.95(c).  The Fish and Wildlife Service subsequently designated additional areas within the U.S. Virgin Islands, California, Oregon, and Washington as critical habitats.  A.R. 4127; 50 C.F.R. § 226.207.

On February 22, 2010, Sierra Club submitted a petition to the Fish and Wildlife Service, asking the Service and the National Marine Fisheries Service ("NMFS") to revise the critical habitat for the leatherback sea turtle "to include the beaches and nearby waters of the Northeast Ecological Corridor of Puerto Rico."  A.R. 4019 (2/22/10 Pet. to Revise Critical Habitat for the Endangered Leatherback Sea Turtle).  "The [Fish and Wildlife] Service has jurisdiction over sea turtles and their associated habitats when they are on land, while NMFS has jurisdiction over sea turtles and their associated habitats in the marine environment."  A.R. 4128.  Accordingly, the Fish and Wildlife Service and NMFS issued separate responses to the petition, addressing the portions of the petition that fall under their respective jurisdictions.  *Id.*  This case concerns only the Fish and Wildlife Service's response to the petition to revise the critical habitat for the leatherback sea turtle to include

> the terrestrial portion of the area as identified in the petition as "[t]he coastline of the Northeast Ecological Corridor of Puerto Rico, running from Luquillo, Puerto Rico, to Fajardo, Puerto Rico, including the beaches known as San Miguel, Paulinas, and Convento, and extending at least .025 mile (132 feet) inland from the mean high tide line."

4

*Id.* (quoting A.R. 4022).  For context, the Court refers to the response by NMFS to the petition as well as the Fish and Wildlife Service's response.

The Fish and Wildlife Service acknowledged receipt of the petition in a letter dated April 1, 2010.  A.R. 0054.  Three weeks later, Sierra Club submitted a letter from 36 non-profit organizations expressing their support for the petition.  A.R. 0060-0106.  Neither the Fish and Wildlife Service nor NMFS published the required 90-day findings in response to the petition, leading Sierra Club to submit a Notice of Intent to Sue to the agencies on June 2, 2010.  A.R. 4069-4072.  The NMFS published its 90-day finding in the Federal Register on July 16, 2010, finding that "the petition does not present substantial scientific information indicating that the petitioned action may be warranted for leatherback sea turtles and their habitat under our jurisdiction."  A.R. 4073-4075; *see also* A.R. 4075 ("[T]he petitioner provided no information, nor is any available in the literature and other material readily available in our files, to prescribe some parameters of an open space feature off the Northeast Ecological Corridor that is essential to the leatherback sea turtle's conservation, thus there is not substantial scientific information indicating that habitat features may exist that meet the first two criteria of the definition of critical habitat.").

In response to the 90-day finding by the NMFS, Sierra Club provided NMFS with a second, supplemental petition, providing additional data to support the requested revision of critical habitat.  A.R. 4077-4099 (11/2/10 Suppl. Pet. to Revise Critical Habitat for the Endangered Leatherback Sea Turtle).[2]  On February 23, 2011, Sierra Club sent a second Notice

---

[2]  NMFS issued a 90-day finding as to the supplemental petition holding the petition presented substantial information indicating a revision may be warranted, but did not issue a timely 12-month finding.  A.R. 4128.  Sierra Club separately filed suit against the NMFS, challenging its failure to issue a timely 12-month finding regarding Sierra Club's supplemental

of Intent to Sue to the Fish and Wildlife Service, noting the Service had failed to issue both the 90-day finding and 12-month finding as to the original petition. A.R. 4101-4103. The Fish and Wildlife Service acknowledged receipt of the notice on March 18, 2011, stating that "[o]ur Jacksonville, Florida, and Boqueron, Puerto Rico, field offices are presently reviewing the petition and information in Service files in order to prepare a 90-day finding. However, we cannot yet predict a publication date." A.R. 4105. By May 27, 2011, the Fish and Wildlife Service had not issued its 90-day finding, leading Sierra Club to file suit. *See generally* Compl., ECF No. [1].

The Fish and Wildlife Service simultaneously published its 90-day finding and 12-month determination on August 4, 2011. A.R. 4126-4132. In evaluating the information provided in the petition for its 90-day finding, the Service divided the claims in the petition into four categories. First, the Service analyzed claims in the petition that "leatherback sea turtle nesting sites in Puerto Rico represent the second most significant nesting activity in the United States." A.R. 4129-4130. The Service concluded that "[a]lthough other important leatherback sea turtle nesting beaches occur in the United States besides those identified in the petition," "the information submitted by the petitioner about the importance of the NEC to leatherback sea turtle nesting in the United States is substantial for this claim." A.R. 4130. Second, the Service evaluated claims in the petition that "leatherback sea turtles in the Atlantic Ocean have declined and could experience a similar decline as those in the Pacific Ocean if their habitat is not

petition. *Sierra Club v. NOAA*, No. 12-572, Compl. (D.D.C. filed Apr. 12, 2012). Sierra Club voluntarily dismissed the action after NMFS issued a 12-month determination rejecting the supplemental petition due to "the lack of reasonably defined physical or biological features that are essential to the leatherback turtle's conservation and that may require special management considerations or protection," 77 Fed. Reg. 32909-01. *Sierra Club v. NOAA*, No. 12-572, Notice of Vol. Dismissal (D.D.C. filed June 22, 2012).

protected."   A.R. 4130.   The Service determined that the petition did not present substantial

scientific information for this claim because the petition failed to provide information to support

the assertion that "leatherback sea turtle populations have substantially declined in the Atlantic

since the 1978 critical habitat designation," or that "the leatherback sea turtles in the Atlantic

Ocean are likely to experience declines similar to those in the Pacific if critical habitat is not

revised to include the beaches of the NEC."   *Id.*

Third, the Service discussed the claims in the petition that the evidence supporting

designation of the Northeast Ecological corridor is stronger than the evidence used by the

Service to designate critical habitat for Sandy Point, St. Croix, VI."   A.R. 4130-4131.   The

Service rejected this claim, noting that

> At the time of the 1978 critical habitat designation, Sandy Point in the U.S. Virgin
> Islands was the only known beach under U.S. jurisdiction used extensively for
> nesting by leatherback sea turtles.  Its designation as critical habitat was taken to
> insure the integrity of the only major nesting beach used by leatherbacks in the
> United States or its territories.  Since that time, as . . . additional beaches have
> been identified in the United States as important for leatherback sea turtle nesting,
> including beaches in Puerto Rico and Florida.  Therefore, the rationale used for
> the Sandy Point critical habitat designation is not applicable for the NEC.

A.R. 4131 (citation omitted).   Fourth, the Service addressed the claims in the petition that

"threats on the nesting beach are substantial and that global climate change is exacerbating the

situation."   *Id*.   The Service agreed with the petition that "threats to leatherback sea turtle nesting

habitat are substantial," and found the information submitted on this claim to be substantial.   *Id.*

Overall, for its 90-day finding, the Service concluded that "the petition presents

substantial scientific information indicating that revision of the critical habitat designation for the

leatherback sea turtle may be warranted."   A.R. 4131.   With respect its 12-month determination,

the Service affirmed that "revisions to critical habitat for the leatherback sea turtle under the Act

should be made."   *Id.*   In terms of how it intends to proceed, the Service explained "[i]t is our

intention to assess leatherback sea turtle critical habitat as part of the future planned status review for the leatherback sea turtle." A.R. 4132. The Fish and Wildlife Service and NMFS are in the process of conducting "an analysis and review" for all but one threatened and endangered species of sea turtle, including the leatherback sea turtle. *Id.* The first review, which concerned the loggerhead sea turtle, was completed and rulemaking was underway as of August 2011. *Id.* The review for the leatherback sea turtle is slated to occur fourth because it is listed as endangered worldwide "and receive[s] the fullest protection under the Act; therefore the need for [a] status review[] for [this] species was deemed not to be as urgent as for other species." *Id.*

After the publication of the Fish and Wildlife Service's 90-day finding and 12-month determination, Sierra Club amended its complaint. Am. Compl., ECF No. [14]. The Amended Complaint asserts two violations of the Administrative Procedures Act arising from the Service's response to Sierra Club's petition: (1) that the Service's decision to delay revision of the critical habitat until the future planned status review was arbitrary and capricious, 5 U.S.C. § 706(2)(A); and (2) the Service's delay in designating the Northeast Ecological Corridor as critical habitat for the leatherback sea turtle constitutes "agency action unlawfully withheld or unreasonably delayed," *id.* at §706(1). Am. Compl. ¶¶ 117-126. Now pending before the Court are the parties' cross-motions for summary judgment.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  *See Liberty Lobby*, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*

### III. DISCUSSION

As a threshold matter, the Fish and Wildlife Service contends that both of Sierra Club's claims are procedurally deficient.  The Service argues that the 12-month determination in response to a petition to revise critical habitat is not reviewable under the Administrative Procedures Act because that decision is "committed to agency discretion by law."  Defs.' Cross-Mot. at 2-3 (quoting 5 U.S.C. § 702(a)(2)).  The Court agrees.  Therefore, the Court shall grant the Service's cross-motion for summary judgment without reaching the merits of the Service's 12-month determination.

### A.      *Action Committed to Agency Discretion by Law*

The Administrative Procedures Act provides for judicial review of certain agency actions, and requires the reviewing court to set aside any "agency action, findings, and conclusions" found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  However, judicial review is not available where the agency action "is committed to agency discretion by law."  *Id.* at § 701(a)(2).  The Supreme Court has articulated as least two scenarios in which this exclusion applies: (1) "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971); and (2) when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  "Agency

actions in these circumstances are unreviewable because the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion." *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (citation omitted).

To determine whether an action is committed to agency discretion courts consider "both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Sec. of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (citation omitted). However, section 701(a)(2) "provides a 'very narrow exception' that applies only in 'rare instances.'" *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007) (quoting *Volpe*, 401 U.S. at 410). Courts "begin with the strong presumption that Congress intends judicial review of administrative action[] unless there is persuasive reason to believe that such was the purpose of Congress." *Ramah Navajo School Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1343-44 (D.C. Cir. 1996) (citations omitted). As set forth below, the Court finds Congress clearly intended to exempt from judicial review the Secretary's 12-month determinations in response to petitions to revise critical habitat.

> B.    *The Text, Structure, and Legislative History of Section 1533(b)(3)(D)(ii) Demonstrate the 12-Month Determination Is Committed to Agency Discretion*

The Court begins with the text of the relevant provision:

> Within 12 months after receiving a petition that is found under clause (i) to present substantial information indicating that the requested revision may be warranted, the Secretary shall determine how he intends to proceed with the requested revision, and shall promptly publish notice of such intention in the Federal Register.

16 U.S.C. § 1533(b)(3)(D)(ii). Nothing in the text of this paragraph constrains that determination, or otherwise limits the course of action the Secretary may adopt. Nor does the statute provide any manageable guidelines or standards that the Court may employ to evaluate

whether the Secretary's plan for proceeding is arbitrary or capricious.

This open-ended grant of authority stands in sharp contrast to the limitations placed on the 12-month determination in response to a petition to list or delist a species under section 1533(b)(3)(B). Congress limited the Secretary to deciding between three possible courses of action in his 12-month determination; the Secretary must find either (1) the petitioned action is not warranted; (2) the petitioned action is warranted, and proceed with rulemaking; or (3) the petitioned action is warranted but immediate rulemaking is precluded by pending proposals to determine if a species should be listed and "expeditious progress is being made" to either list or delist the species. *Id*. at § 1533(b)(3)(B)(i)-(iii). The statute explicitly provides that if the Secretary makes the first or third findings, that decision "shall be subject to judicial review." *Id.* at § 1533(b)(3)(C)(ii). Thus, Congress enacted a system in which the Secretary must elect from specific options in responding to a petition to list or de-list a species, with negative determinations subject to judicial review, but the Secretary has broad discretion to decide how to respond to petitions to revise critical habitat, with no explicit grant of judicial review.

The legislative history of the 1982 amendments—which codified the current provisions governing the Secretary's response to petitions to list/delist and to revise critical habitat—confirms that Congress intended the Secretary to have broad, unreviewable discretion in issuing 12-month determinations regarding petitions to revise critical habitat. In reference to petitions to list or delist a species, the Conference Report stated that "[i]n several ways, these amendments will replace the Secretary's discretion with mandatory, nondiscretionary duties," including by requiring the Secretary to "within 12 months after receiving the petition, make one of three findings" specified in the statute. H.R. Conf. Rep. 97-835 at 21-22 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2860, 2861-62. The report discusses each of the three findings available for the

12-month determination for a listing/delisting petition, and indicates that the first and third determinations "shall be subject to judicial review," in order to determine "whether the Secretary's action was arbitrary or capricious in light of the scientific and commercial information available concerning the petitioned action." *Id.*, 1982 U.S.C.C.A.N. 2860, 2862-63.

Immediately following the discussion of petitions to list or delist a species, the report addresses the Secretary's response to petitions to revise critical habitat designations, which is set forth below in its entirety:

> Petitions to revise critical habitat designations *may be treated differently*. As with petitions to revise the lists of endangered and threatened species, the Secretary shall, to the maximum extent practicable, within 90 days after receiving the petition, make, and promptly publish, a finding whether the petition presents substantial information indicating that the petitioned action may be warranted. Petitioners are not required to present economic information relevant to the proposed revision. If such substantial information is found to be present, the Secretary shall, within 12 months after receiving the petition, determine, and promptly publish a notice indicating *how he intends to proceed with respect to the petitioned action.*

H.R. Conf. Rep. 97-835 at 22, 1982 U.S.C.C.A.N. 2860, 2863 (emphasis added). The report does not mention any intended limits on the Secretary's 12-month determination, or that such determination is subject to judicial review, much less on what the arbitrary and capricious review should be based. Sierra Club argues that that "[t]here is no merit in requiring prompt public action on critical habitat revision petitions . . . if Congress intended [the Service] to 'hurry up and wait.'" Pl.'s Reply at 8. The Conference Report demonstrates Congress was aware of this potential, but, unlike the amendments regarding petitions to list/delist, elected not to restrict the Secretary's discretion in determining how to proceed following the 12-month determination regarding petitions to revise critical habitat. Moreover, as Sierra Club admits, public notice is valuable even if the agency intends to delay revising critical habitat until some point in the future because, among other reasons, "the public will be able to see how quickly—or slowly, as may be

the case—the Service is moving, and can appeal to Congress to appropriate more funds to DOI or lobby the President to replace agency officials." *Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1, 11 (D.D.C. 2003). The plain text, structure, and legislative history of the statute indicate Congress committed the 12-month determination for petitions to revise critical habitat designations to the Secretary's discretion as a matter of law.

      C.    *The Court Lacks Any Manageable Standards for Evaluating the Secretary's 12-Month Determination*

The Fish and Wildlife Service emphasizes that the determination as to how the Secretary intends to proceed is committed to agency discretion because the Act fails to identify "any standard for how to assess the Secretary's determination of how he 'intends to proceed.'" Defs.' Cross-Mot. at 19. "Not only are there no parameters on the timeframe within which FWS must act, but there are also no guidelines governing the substance" of the agency's decision. *Id.* The open-ended grant of authority to the Secretary in making 12-month determinations stands in stark contrast to the statutory (or regulatory) language in other cases that the D.C. Circuit has found provided manageable standards for judicial review. *See, e.g.*, *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007) (finding discretion of the chief operating officer of a retirement home was limited by the requirement to provide "high quality and cost-effective" medical care); *Menkes v. Dep't of Homeland Sec.*, 486 F.3d 1307, 1314 (D.C. Cir. 2007) ("[A] court could still review the Director's determination with respect to the adequacy of the service provided by the pool-i.e., whether the pool has the physical and economic ability to provide sufficient service."); *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1224 (D.C. Cir. 1993) (holding decision not committed to agency discretion where the Secretary was limited to designating "urban area" per the Office of Management and Budget definition or "similar area"); *but see Claybrook v. Slater*, 111 F.3d 904, 908 (D.C. Cir. 1997) ("Adjourning a meeting in 'the public interest' is the kind of

decision that resists judicial review.").   Despite the lack of *any* standard for reviewing the

Secretary's discretion in section 1533(b)(3)(D)(ii), Sierra Club argues that the Court may divine

sufficient guidelines from three sources: (1) other provisions of the Endangered Species Act; (2)

the standards of review set forth by the Administrative Procedures Act; and (3) the general

purpose behind the Endangered Species Act.   The Court shall address each proposal, though in

the end none provide a workable framework for evaluating 12-month determinations.

### 1.   Other Provisions of the Endangered Species Act

First, Sierra Club suggests that the Court should use the standard articulated in 16 U.S.C.

§ 1533(b)(2) to determine whether the Secretary's 12-month determination was arbitrary and

capricious.  Pl.'s Reply at 6.[3]  Section 1533(b)(2) provides that the Secretary "shall designate

critical habitat, and make revisions thereto . . . on the basis of the best scientific data available

and after taking into consideration the economic impact, the impact on national security, and any

other relevant impact, of specifying any particular area as critical habitat."   16 U.S.C.

§ 1533(b)(2).  "[T]he best scientific data" criterion, by itself or in combination with the factors

listed in section 1533(b)(2), does not provide a manageable standard to evaluate the Secretary's

12-month determination.  The plaintiff in *Steenholdt v. Federal Aviation Administration*, 314

F.3d 633 (D.C. Cir. 2003), raised an analogous argument, suggesting that the court use the

"substantial evidence" standard articulated elsewhere in the Federal Aviation Act to evaluate the

---

[3] Although Sierra Club cites *Center for Biological Diversity v. Evans*, No. 04-4496, 2005 WL 1514102 (N.D. Cal. June 14, 2055), as reviewing a 12-month critical habitat determination under the Administrative Procedures Act, Sierra Club does not suggest the Court adopt the holding in *Evans* that the Secretary's discretion is also limited by 16 U.S.C. § 1533(a)(3).  *Id.* at *3 (holding that "[w]ith respect to a petition for habitat revision," Secretary must either "(i) publish a proposed rule revising the critical habitat or finding that a statutory factor ( e.g., economic impact or national security) overrides the need for species protection or (ii) find that revision of critical habitat is either not 'prudent' or not 'determinable'").

Administrator's decision to rescind designations of Designated Engineering Representatives.  *Id.*

at 635, 639.  The act empowered the Administrator to rescind such designations "at any time for

any reason the Administrator considers appropriate."  *Id.* at 638.  The D.C. Circuit rejected the

plaintiff's suggestion that courts review the decisions under the "substantial evidence" standard,

noting that

> [T]his argument begs the question: substantial evidence of what?  For any
> decision made by the Administrator, there will always be substantial evidence that
> the decision was made "at any time for any reason."  Because there are no
> constraints on the Administrator's discretion, there certainly are no judicially
> manageable standards by which to judge the Administrator's action.

*Id.* at 639.

Here, Sierra Club's suggestion that the Court review the Secretary's 12-month

determination based on "the best scientific data" begs the question: best scientific data as to

what?  Section 1533(b)(2) addresses the standard for making substantive revisions to critical

habitat, but it does not provide a manageable standard for the Court in evaluating a 12-month

determination which concerns only if, when, and/or how the Secretary intends to proceed with

such a revision.  As the D.C. Circuit recognized,

> agencies must regularly determine what action, if any, they should take,
> depending on numerous factors, including "whether agency resources are best
> spent on this violation or another, whether the agency is likely to succeed if it
> acts, whether the particular enforcement action requested best fits the agency's
> overall policies, and, indeed, whether the agency has enough resources to
> undertake the action at all."

*Sierra Club v. Jackson*, 648 F.3d at 856 (quoting *Chaney*, 470 U.S. at 831).  "Congress can limit

an agency's discretion 'either by setting substantive priorities, or by otherwise circumscribing an

agency's power to discriminate among issues or cases it will pursue,'" *id.* (quoting *Chaney*, 470

U.S. at 833), and did so with respect to the Secretary's response to petitions to list/delist species.

Congress elected not to enact either type of limit with respect to the Secretary's decision as to

how to proceed in response to a petition to revise critical habitat. Because there are no constraints on the Secretary's discretion, "there certainly are no judicially manageable standards" by which to judge 12-month determinations. *Steenholdt*, 314 F.3d at 639.

On a practical level, section 1533(b)(2) does not provide a workable body of law to review 12-month determinations regarding petitions to revise critical habitat. The 12-month determination in this case indicates that the Service believes it should revise the critical habitat for the leatherback sea turtle, but finds that the best framework in which to conduct that review is as part of the planned status review. A.R. 4132. Because the leatherback sea turtle already receives the fullest protection under the statute, the Service determined that review should take place after the status reviews for the green sea turtle and olive ridley sea turtle. *Id.* The balance of scientific data with relevant impacts of designating a particular area of critical habitat for the leatherback sea turtle, *see* section 1533(b)(2), does not provide any law from which the Court can determine whether the review of the leatherback sea turtle should occur now, after the green sea turtle but before the olive ridley sea turtle, or after both species as the Service determined. This type of determination, which may involve "a myriad of factors, including internal management constraints," is the type of decision generally unsuitable for judicial review. *Conservancy of Sw. Fla. v. U.S. Fish & Wildlife Serv.*, 677 F.3d 1073, 1084 (citation omitted) (finding the Service's denial of a petition to initiate rulemaking to designate critical habitat for a species listed prior to 1978 is committed to agency discretion and thus unreviewable). Section 1533(b)(2) becomes relevant at the point the Secretary decides to revise the critical habitat for a species, but provides no guidance—to the Secretary or to the Court—in determining how the agency should proceed in response to a petition to revise critical habitat.

2.      Administrative Procedures Act

Second, Sierra Club suggests that "[t]he familiar APA standards, *see* 5 U.S.C. § 706, provide ample guidance on testing agency decisions for rationality and on the record," absent any guidance from the Endangered Species Act.  Pl.'s Reply at 9.  The D.C. Circuit also rejected this argument in *Steenholdt*:

> Petitioner's mistake is that he confuses the presence of a standard of review with the existence of law to apply.  Were we to accept this as a basis for review of the Administrator's action, there would be "law to apply" in every agency action; no agency action could ever be committed to agency discretion by law because the "substantial evidence" standard of section 706(2)(E) of the Administrative Procedure Act applies generally to all agency action.  Petitioner's interpretation would render section 701(a)(2) meaningless.

314 F.3d at 639.

Additionally, neither of the cases cited by Sierra Club support the proffered approach.  The plaintiffs in *Volpe* challenged the Secretary of Transportation's decision to authorize the use of federal funds to finance the construction of an interstate highway through a public park in Memphis, Tennessee.  401 U.S. at 305.  The Supreme Court rejected the Secretary's claim that the decision was committed to agency discretion in light of the text of the statute, which provided the Secretary could only authorize the use of such funds in two limited cases:

> Section 4(f) of the Department of Transportation Act and s 138 of the Federal-Aid Highway Act are clear and specific directives.  Both the Department of Transportation Act and the Federal-Aid to Highway Act provide that the Secretary 'shall not approve any program or project' that requires the use of any public parkland 'unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park * * *.' 23 U.S.C. s 138 (1964 ed., Supp. V); 49 U.S.C. s 1653(f) (1964 ed., Supp. V). This language is a plain and explicit bar to the use of federal funds for construction of highways through parks—only the most unusual situations are exempted.

*Id.* at 411.  Unlike this case, the statute at issue in *Volpe* outlined the criteria the courts were to employ in reviewing the Secretary's decision under the Administrative Procedures Act.

17

Likewise, Sierra Club's reliance on *Robbins v. Reagan*, 780 F.2d 37 (D.C. Cir. 1985), is unavailing because the *Robbins* court found the relevant statute itself limited the agency's discretion in discrete ways, such that a court could determine whether the decision was based on impermissible factors as alleged by the Plaintiff.  *Id.* at 48 ("[G]iven the fact that the statute limits the uses for which the funds can be used, we see no barrier to our assessing whether the agency's decision was based on factors that are relevant to this goal.").  The standard of review in the Administrative Procedures Act simply is not a substitute for a manageable standard for the Court to employ in evaluating the Secretary's exercise of discretion embodied in the 12-month determination.

### 3.    Purpose of the Endangered Species Act

Third, Sierra Club cites *Robbins* for the proposition that

> While the absence of clear statutory guidelines might at times hamper a court's ability to deem agency action contrary to law, it need not always do so. Even when there are no clear statutory guidelines, courts often are still able to discern from the statutory scheme a congressional intention to pursue a general goal.  If the agency action is found not to be reasonably consistent with this goal, then the courts must invalidate it.

*Id.* at 45.  Thus, Sierra Club asserts that the Endangered Species Act's "clear purpose and goal provide the Court with meaningful standards against which" to test the Service's decision.  Pl.'s Reply at 7; *see also id.* ("Setting out to conserve 'the ecosystems upon which endangered species' depend, 16 U.S.C. § 1531(b), the ESA is 'the most comprehensive legislation for the preservation of endangered species ever enacted by any nation.'  *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).").  In the context of this case, Sierra Club's argument is unpersuasive.

Certainly, the purpose of the Endangered Species Act is to protect endangered species, including habitat critical to those species.  But relying on that general principle alone as a basis for judicial review would eviscerate the exception set forth in 5 U.S.C. § 701(a)(2).  On this

18

broad level, almost every statute will have *some* discernible purpose.   The D.C. Circuit's

decision in *District of Columbia v. Schramm*, 631 F.2d 854 (D.C. Cir. 1980), demonstrates that

the inquiry is more complicated than simply lifting the overarching goal of a particular piece of

legislation.   In *Schramm*, the District of Columbia challenged the Environmental Protection

Agency's failure to exercise its authority under the Clean Water Act to object to a discharge

permit the state of Maryland issued to a wastewater treatment plant to discharge effluent into

Rock Creek.   631 F.2d at 858.   Looking at the structure of the statutory scheme and the

legislative history, which emphasized placing the regulatory burden on states rather than the

federal government, the court concluded that the EPA's decision not to object to a state-issued

permit was not reviewable because that decision was committed to agency discretion.  *Id.* at 859-

62.  The court further noted that

> The Clean Water Act allows the EPA to choose whether to participate in the
> application for a state NPDES permit.   The Act also gives the EPA freedom to
> waive notice of the application and to waive any violations in the permit.   Certain
> guidelines apply to the application process, but these guidelines do not bind the
> Agency in its supervisory role of monitoring state permits.

*Id.* at 861.   According to Sierra Club's theory, the fact that one of the purposes of the Clean

Water Act is to eliminate the discharge of pollutants into navigable waters, *see* 33 U.S.C.

§ 1251(a)(1), would be sufficient for courts to evaluate the EPA decision not to object to a state-

issued permit.  *See also Schramm*, 631 F.2d at 855 (noting the Clean Water Act was enacted "to

restore and maintain the chemical, physical, and biological integrity of the Nation's waters").

Rather than rely on the overarching purpose of the legislation, the Court focused on whether

Congress provided any usable guidance regarding the issue in question.   Broad-sweeping

pronouncements by Congress as to the general purpose of the Endangered Species Act are not

meaningful standards through which the Court can judge the agency's conduct.   Absent a

workable standard to evaluate the Fish and Wildlife Service's decision, the Service's 12-month determination regarding a petition to revise critical habitat is committed to agency discretion and thus unreviewable.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the Fish and Wildlife Service's 12-month determination in response to a petition to revise critical habitat for a species listed under the Endangered Species Act is unreviewable.  The text, structure, and legislative history of the relevant statutory provision demonstrates Congress granted the Service broad discretion in making such determinations, and elected not to provide any manageable standard to evaluate the Service's exercise of discretion.  This type of decision is generally not suitable for judicial review, and neither the Endangered Species Act nor the Administrative Procedures Act provide sufficient guidance for the Court to evaluate the Service's determination.  The 12-month determination is a decision committed to the agency's discretion by law, and thus unreviewable under the Administrative Procedures Act.  Accordingly, the Plaintiff's Motion for Summary Judgment is DENIED and the Defendants' Cross-Motion for Summary Judgment is GRANTED.

An appropriate Order accompanies this Memorandum Opinion.


_____*/s/*_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE